## THE MIDDLESEX.

### (District Court, D. Maryland. April 14, 1911.)

COLLISION (§ 102*)—VESSELS IN SLIP—MUTUAL FAULT.

A scow, which had been lying alongside a vessel in a slip, cast off and was being moved up the slip by her bow line past a steamer, whose wheel was turning, when she was drawn by the suction within reach of the wheel, and was struck and sunk. *Held*, that the steamer was in fault for having no lookout to give warning and stop the engine in case of danger to other vessels, and that the scow was also in fault for attempting to pass the side of the steamer when her wheel was turning and the danger was obvious.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 102.*]

In Admiralty. Suit for collision by the Chesapeake Lighterage & Towing Company against the steamship Middlesex. Decree for half damages

H. N. Abercrombie, for libelant.

Ralph Robinson, for respondent.

ROSE, District Judge (orally). The owners of Scow 132 libeled the steamship Middlesex. The scow had been alongside the Anthony Groves, a steamer lying in the same slip as the Middlesex. Having completed the purpose for which it had been made fast to the Groves, those in charge of it cast off its stern line from the Groves and started to move it by means of its bow line up the slip past the bow of the Groves. Before this manœuver was completed the barge sank. The resulting damage amounted to $519.58.

The libelant says the sinking of the barge was due to its being drawn into contact with the Middlesex by the suction produced by the turning of the wheel of the latter. The Middlesex in its answer said that the barge sank because of its own unseaworthiness, and not as a consequence of any injury received by contact with the Middlesex.

The Middlesex at the time was fast to her pier, but her assistant engineer had started her engines for the purpose of blowing out her cylinders and making certain that her machinery was in good order before starting on her regular trip down the bay. The engines were

in motion, and the paddle wheel of the Middlesex was turning, when Scow 132 cast off from the Anthony Groves. There was at the time no one on lookout on the Middlesex. There was nobody on the Middlesex who could have been hailed by those on the scow. The injury resulted from the barge being brought by the suction of the water, resulting from the turning of the wheel of the Middlesex, into contact with the wheel, and being struck by one of the iron buckets or paddles of the wheel.

The libelant claims that the Middlesex was negligent in so turning her wheel without having some one on watch who could have had the engine stopped in case of necessity for so doing. I sustain this contention. Had there been such a lookout on the Middlesex, I believe the accident would not have occurred. That there was not a lookout conclusively appears.

The theory of the original answer and the testimony of the witnesses produced by the Middlesex show that there was nobody on board of her who saw the barge drifting down towards her. There was a lighter alongside of the Middlesex. The men on the lighter did see it. Neither side, it is true, has produced any of these men as witnesses; but the men on Scow 132 say that the men on the lighter saw what was happening and tried to prevent it. The testimony of the first officer of the Middlesex is quite in harmony in this respect with the statements of those on the scow. He says his attention was first attracted to the barge by some noise or shouting or excited talk on board the lighter. He, however, himself did not see the scow when it drifted under the guard of the Middlesex and was hit by her paddle. The first he saw of it was after all these things had happened, and when it had drifted or been pulled over to the other side of the slip and was about to turn over.

The Middlesex was negligent, in my judgment, in not having some one who could have watched the motions of the raft in the neighborhood, and who could have given immediate directions for the stopping of her wheel in case of necessity.

It is contended on behalf of the Middlesex that, whether this be true or not, she is not responsible, because no one on the scow hailed the steamer and asked her to stop her engine. Such hailing, in my judgment, would have done no good. As the witness from the scow testified, it would have been unnecessary and idle; for there was nobody to have heard or understood such hailing. Those on the scow were much better employed in trying, as they did, first with the hook and then with their hands, to keep the barge from hitting the steamer in a dangerous place. This effort might have succeeded if it had not been for the chance that the corner of the barge struck the Middlesex and managed in that way to get between the rims of her wheel, and thus came into immediate contact with the heavy paddle buckets.

On the other hand, it seems to me that the scow was also guilty of negligence. The assumption upon which it is entitled to recover, if at all, is that there is danger in turning the wheel of a steamer under the circumstances in evidence. If that be true, the danger must be quite as apparent to persons on such a scow as it would be to those on board

a steamer. Very probably it is even more keenly appreciated by the former than by the latter. When the barge cast off while the paddle wheel of the Middlesex was in motion, those on board of it were negligent. The accident would not have happened if the scow had not cast off while the Middlesex wheel was turning. It would not even then have happened, had anybody been on watch on the Middlesex.

I must divide the damage, and give a decree to the libelant for one-half the amount thereof, $259.79.